Please call the next case. 111, Pursuit 483, James Poulos v. Bilbell Department. Counsel, you may proceed. Justices. Counsel. May it please the Court. I couldn't wait to get here on this case, and I'm finally here. Could you tell us who you are? My name is Joseph Leonard. I represent the plaintiff in this case, the appellant, James Poulos. And the reason you tossed your name is because you were so anxious to be here today. Yes, and I also had the pleasure today of hearing my colleague, Rich Alexi, argue, which is another pleasure in and of itself. So I'm equally blessed. I stand before you today asking you to take the courage that this bench has taken many times in workers' compensation cases. I stand before you with a manifest weight of the evidence question, and I stand before you to ask you to show you, to demonstrate to you that an opposite conclusion is clearly apparent in this case, and to have the courage to reverse the decision of the Commission and remand this back to the Commission for a determination of benefits. And here's why I ask you to do that. Mr. Poulos is a 47-year-old carpenter working for the Respondent for 14 years. No prior history of any shoulder problems until eight or seven, about seven or eight months prior to his reported injuries where he says he felt shoulder pain while working. The central issue in this case, the facts are highly contested, is whether or not he was a working foreman or whether or not he was a carpenter foreman. Respondent submitted a job description and said he was a foreman. He didn't do any work. He stood there and delegated the work. Therefore, he didn't use his arms in a repetitive fashion. He didn't shovel concrete. He didn't raise trusses. He didn't do the jobs that would cause or aggravate a shoulder condition. He stood there and delegated. And in reliance upon that job description, Dr. Walsh, their independent medical evaluator, said, yeah, that's what he did, and I agree. His condition is degenerative, bilaterally, not related to either injury, March 26 of 09 or March 27 of 09, and not related on the basis of repetitive trauma either. Dr. Walsh said his opinion was that his injuries were due, however, to his scrap-medaling business. Well, Justices, I went to trial and submitted the records of what he did in scrap-medaling. He did 20 to 27 hours of scrap-medaling in the year prior to his accident. The subpoena was issued to the Cicero Scrap Metal Yard, and those records were produced. I submitted records of his prior employment with global forming in the year prior to demonstrate 2,677 hours of working foreman activities, 50 hours a week on average if you do the math and divide that by 52 weeks. What did I have to support the proposition, to support Mr. Poulos' self-serving statements that he was a working foreman, to support Mr. Poulos' self-serving handwritten job description? Here's what I offered the commission. I offered the testimony of Ivan Castro, who testified for the respondent that, yeah, I did see him do work as a working foreman. As a matter of fact, the two dates that Mr. Poulos says he injured himself, March 26th and March 27th of 2009, he was doing work as a working foreman. Well, let's set that aside. I mean, this case, you know, and I appreciate you inviting us to take the courage, but one of the problems you have to overcome is it isn't just looking at the weight of the evidence. This case turned on the commission and the arbitrators' assessment of the credibility of the claimant and the medical evidence. They said that the claimant, the commission, didn't believe in essence anything he said. They also felt there were problems with the medical testimony. So how do you overcome, how do you convince us to overrule the commission and credibility issues? Well, because in order for the commission's credibility issues to be affirmed, they have to be based on a preponderance of the evidence. The commission's credibility stance on issues of fact in the record are wrong. On accident, you've got the two co-workers saying that they didn't see anything that indicated he was injured. I have a specific accident claim and a repetitive trauma claim. The applications for adjustment of claim were amended prior to the commencement of arbitration to reflect the repetitive trauma claim, Your Honor. Irrespective of the testimony as to no specific accident, I submit to this Court I have proved by a preponderance of the evidence that Mr. Poulos' condition to his shoulders was due in part to his repetitive employment activities. I beg this Court to take a look at the factual evidence. I beg this Court to do that. I have testimony to that. So the medical evidence, you have Chudnik, who obviously opines that the condition was causally related to the repetitive nature of your claimant's employment. Yes, sir. Then you've got Walsh, who says it was a normally generated process, and obviously they believe Walsh. Let me discuss Walsh's opinion. Thank you for bringing it up. I submit to you that the reliance on Dr. Kevin Walsh is against the manifest weight of the evidence. This Court has previously held, in Reed-Joseph, that I cite in my brief, if the basis of an expert's opinion is grounded in guess or surmise, it, too, is speculative to be reliable, and a Commission decision based on such faulty expert testimony must be deemed to be against the manifest weight of the evidence. You're right. They've got Dr. Walsh. The Commission cited Dr. Walsh to deny benefits. Let's look at Dr. Walsh's opinion. Dr. Walsh wrote a report and said Mr. Poulos did not aggravate his arms on March 26 or March 27. Mr. Poulos did not sustain a repetitive trauma activity claim on the last day of his employment. Why? Because his job was that of a foreman carpenter. He opined, Your Honor, that Mr. Poulos's bilateral shoulder condition could be due, in part, to his scrap metal businesses. That's Dr. Walsh's opinion verbatim. Let's dissect that opinion. On cross-examination, I asked Dr. Walsh, Dr. Walsh, and I cite it in my brief, assuming that the job description provided to you by a respondent of a working foreman is inaccurate. Let's say, assuming hypothetically, that Mr. Poulos did do work as a working foreman. He did raise his arms all day. He did jackhammer. He did carry wheelbarrows. He did tie down branches. He did the work of a working foreman. Dr. Walsh's opinion, Your Honor, I submit to you on that page cited in my brief states. Mr. Leonard, if your assumption is correct, then the condition to his bilateral shoulders would be due, in part, and would have been aggravated as a result of his repetitive employment activities. So let's step back. What did the facts at trial demonstrate? Where does the preponderance of the evidence lie in relation to Mr. Poulos's work activities? If the preponderance of the evidence lies that he was a foreman and not a working carpenter, I lose. You are correct. The commission is right. If the preponderance of the evidence lies in my box that he was a working foreman, then the decision is against a manifest weight in the evidence because the opinions of Dr. Walsh are not reliable and the commission must throw them out. If you throw out Dr. Walsh's opinion, I have Dr. Chudnik standing alone on the issue of causal connection. Ivan Castro testified for the respondent. On cross-examination, he said, yeah, he did the job of a working foreman. Yeah. Why did the commission discount Chudnik's opinion? I have no idea. I am shocked they discounted Chudnik's opinion. They adopted the proposed decision submitted by my opponent. The arbitrator signed off on it. The commission, not wanting to rewrite this decision and explain their position, similarly just attached the decision of the arbitrator to their two-page decision and opinion on review without going into detail to offer an explanation to answer your question. I submit to this Court, on this record, Mr. Poulos, through his own testimony, through the testimony of Trin Vega, the respondent's witness, through the testimony of Ivan Castro, the respondent's witness, through the testimony of Mr. Showalter, a co-worker who worked with him in the year prior and also testified he did the work of a working foreman, and also Ray Ulrich, who also worked with him and said, yes, he did the work of a working foreman. So where does the preponderance of the evidence lie? The preponderance of the evidence says that Dr. Walsh stated that if he did those activities, his opinion will change, that Mr. Poulos does have a causal relationship of his condition to his work activities and is entitled to benefits. I submit to this Court, you have demonstrated time after time the guts to overturn a decision of the commission, provided you have sufficient basis to do so. I submit to you that this is one of those cases. This is a case that I proved by a preponderance of the evidence that his condition was due in part to his repetitive employment activities. I had four witnesses testify to that, and I impeached the hell out of Dr. Walsh, and he admitted that in fact, if that were the case, and that's what the record showed, that this man's condition would in fact be work-related. And I think the commission's reliance on Dr. Walsh is unfounded. I think his testimony was based on surmise and guess, and I think his testimony must be thrown out. And I think on this record alone, I have proven that the manifest weight of the evidence dictates that Mr. Poulos should be entitled to benefits. I have yet for the respondent to show me any basis that his injury was related to scrap metal. Are you going to tell me that 20 to 27 hours of scrap metal in the year prior to his accident was a contributing cause to his degenerative rotator cuff tears, and 15 years of employment as a working carpenter, supported by testimony from coworkers and two witnesses of the respondent that his job was repetitive, was not a contributing cause? No way. I'm here before you because you've shown the guts before. I'm asking you to scrutinize this record. I'm asking you to look at it, and I'm asking you to allow Mr. Poulos the benefit of having over $200,000 in medical bills that remain outstanding, paid by workers' compensation, and compensate him for the injuries that he sustained. This is a hardworking man. Dr. Chudik said he's way too young to have the type of degeneration in his shoulders that he's seeing. He's never seen this before. It's atypical. It's atypical because of this man's occupation. Please, Justice, as I ask you to overturn this decision, remand it to the commission so Mr. Poulos can get the benefits he deserves. Thank you. Thank you, counsel. Counsel, you may respond. Good afternoon. If you'll please the Court, my name is Joseph Mulvey. I'm the respondent. Good afternoon, counsel. What we've just seen echoes counsel's brief. He just pointed out that it's not my job to point, to prove that the appellant's scrap metal business caused his injuries. He failed to point out that it's not this Court's job to reweigh the evidence, to make new medical and credibility determinations, and to determine that the commission's decision was against the preponderance of the evidence, a phrase the counsel used countless times throughout his arguments. The one thing that he forgot to address is the petitioner's credibility. Counsel, in his brief, and again today, doesn't even ask anyone to determine the petitioner was, in fact, credible, which we wouldn't be doing because we're not reweighing evidence. But without that determination, there is zero evidence to support the petitioner's claims. But what about his arguments, I don't know if you've tried the case before the arbitrator, but that he turned your doctor around, Dr. Wallace ended up supporting his claim. Well, I don't think that absolutely accurately encapsulates it. Further, Dr. Walsh never really had an opinion or the opportunity to opine on specific repetitive trauma because that was never alleged until the day of trial. The application was not amended until the day of trial to allege repetitive trauma as the cause of this accident. The petitioner also failed to discuss his scrap metal business with Dr. Walsh. He was supplied that information from elsewhere. These are, you know, more reasons that the commission found the petitioner lacked credibility. But, yeah, what about his cross-examination during trial? The petitioner's... Did it not come out, did he take an evidence step, or when did he... It was an evidence deposition, Your Honor. All right. So at the time of the evidence steps, repetitive trauma theory had not yet surfaced? Correct. Repetitive trauma was alleged on the day of the arbitration for the first time. So, taking a step back, there is no evidence whatsoever to support petitioner's allegations because he's been found to lack credibility. His physician, Dr. Chudik, has also been found to lack credibility. Counsel's request that this court reweigh the evidence, reweigh the medical evidence, and reweigh the testimony is completely out of step with the standard of review. The argument that Dr. Walsh's opinion is based on guess or surmise is also a bit misleading because it, again, fails to take into account the petitioner's role in that guess or surmise. The petitioner was not forthright with the doctor. The petitioner did not tell him about the scrap metal business. He did not give him the information he needed to make his determination. Was counsel right that the evidence shows the scrap metal business consisted of only, like, 27 hours during an entire calendar year? It was more than 27 hours, but the scrap metal business was, in terms of clock hours, certainly much less than the hours that he worked as a carpenter foreman. That being said, turning back to the idea of the repetitive trauma, counsel also failed to prove in any meaningful way a day on which any accident may have manifested, either a traumatic accident or a repetitive accident. There is no evidence that March 27, 2009, was the day on which a repetitive trauma manifested. If there's any evidence whatsoever, it's that it manifested in March 2008, a year prior, not seven or eight months prior, as counsel stated, because the petitioner testified that shoulder pain began then, and in his mind, he attributed it to his employment. The manifestation date is the date on which an injury is reasonably apparent and attributable to one's employment through the eyes of a reasonable employee. This petitioner testified that, in his mind, it was connected a year earlier. So if there were a repetitive injury, that is the manifestation date. There's been no evidence against that finding, and if that were true, the commission's finding that the notice period was not observed cannot be disturbed. Petitioner's friends, petitioner's co-workers all testified that he did not offer any evidence of injury. He did not complain. He never said, my shoulder, sir. He was seen the day following his injuries or his alleged injuries working. He continued to work through April, the month following the alleged injuries. He didn't treat until a month later. When he initially treated, his shoulders had five-by-five strength. His shoulder injury magically became more severe from April to May, a month after he stopped working. There is simply no competent evidence to support any allegation that these injuries occurred while at work. That's all I have. The Court has any questions? Thank you. Thank you. Counsel may reply. Yes, Your Honor. Three briefings, two points I'd like to raise. Counsel was not apprised of my repetitive trauma theory for the first time on the day of trial, like you asked of me, Your Honor. Dr. Walsh's report that he wrote a year and a half before trial said it is not due to the acute injuries of March 26, 2009, or March 27, 2009, nor is it due to his repetitive activities of a carpenter at Global Forming. It could, however, be due to his scrap metal injuries. Having said that opinion, Dr. Walsh didn't know how long he scrapped metal, how many hours he scrapped metal, what he did to scrap metal. Come on. Come on. I then amended on cross-examination. I then went into his repetitive trauma opinion that it's due to scrap metaling, but not due to his employment activities. And here's what he said. After having reviewed the Global Forming job description prepared by plaintiff, that if plaintiff did perform these activities on a repetitive basis, then these activities could have contributed to the degeneration in plaintiff's shoulders bilaterally, thereby requiring him to seek treatment and ultimately require surgery. That's at the transcript on page 1,695. That's a direct quote from Dr. Walsh. So he says, you know what, if that's what he did, then, yeah, I changed my opinion. It is due to his employment activities. And you've got to go back. Did I prove that? Did I offer enough evidence to show that I can back that statement up? And, Your Honors, I offered testimony from two of the respondents' witnesses that said, yeah, he wasn't just a foreman. I offered testimony from two of Mr. Poulos' coworkers who stood by him in the year prior and said, yeah, he worked with us. The last two days that he apparently allegedly got injured, which was not corroborated by Ivan Castro in the record, he was doing work of a working foreman. Are we to believe that those are the only two days he did work as a working foreman? Come on. With respect to counsel's position that the manifestation date in a repetitive trauma claim is the date the person knew or should have known or the date that he knew that his condition was related to his employment activities, I stipulate to this bench that Mr. Poulos testified on a direct question from counsel's predecessor who tried this case, who, by the way, did a remarkable job. When did you first feel pain in your shoulders? He did say six months earlier. She asked him again, do you think it was work-related? He said, yeah, probably. Now, counsel stood before you and said, that's the manifestation date in a repetitive trauma case? Because no application for adjustment of claim was on file within that time frame, because timely notice wasn't given within 45 days from that date, the claim is borrowed. I disagree. I want this court to look at Duran. I want you to look at 3D discount. I want you to look at Peoria Belmont. All those cases stand for the proposition. In Duran, the employee had bilateral carpal tunnel syndrome that she believed was work-related in 1998. She continued to work until the pain increased, until she couldn't work anymore, and eventually sought medical treatment. She filed a claim alleging the manifestation date was the last day of her employment. This panel said, citing the Supreme Court, a petitioner should not be penalized while continuing to work while in pain. You then affirmed you were to benefit, citing the manifestation date as the last day of employment. That's precedent. I'm not asking you to violate the court. Counsel, we got reversed in Duran. I wrote it. Yes, but the Supreme Court then indicated that the manifestation date was the last day of employment. That's what I'm wanting to do. We got reversed in Duran. I'm sorry. We didn't write it. Correct. You are correct, Your Honor. And that's the case. So when counsel stands up here and says, I lose because the manifestation date is six months prior to his last day of employment, that is not true. I don't know why we lost at arbitration. I don't know why the commission said my client is not credible. I don't know why the circuit court rubber-stamped the decision. Well, I kind of do. Not much happens at that level other than just a order in which the case that goes up on a manifest weight is just deferred. So when I say I can't wait to get before you, Your Honors, it's because you've shown the guts before to dissect a case, look at the four corners of the transcript, dig in to decide if the commission decision was against the manifest weight of the evidence. And you've said before that you will not hesitate to overturn a decision of the commission if it is against the manifest weight of the evidence. And I submit to you, Your Honors, that if you look at these facts and you put evidence in a jar that's entitled Jim Poulos, and you put evidence in a jar that's entitled global forming, and you put those jars on a scale, it's going to go like this in favor of Jim Poulos. That's why I ask you to overturn this decision and remand it back to the commission. Thank you very much for your time. Thank you, counsel. Thank you, counselors. The mayor will be taking our advisement that this position shall issue. Let's call the final case today.